IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FILED
AUG 16 2016
CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:16-MJ- 544 |
| JAMES VANBLARICUM (01) | |

## CRIMINAL COMPLAINT

I, Matthew J. Write, am a United States Postal Inspector assigned to the Fort Worth Division of the U.S. Postal Inspection Service sworn and empowered to investigate crimes involving the U.S. Postal Service and currently assigned to investigate mail fraud against consumers, businesses, and the government, being duly sworn, I state the following is true and correct to the best of my knowledge and belief:

From on or about January 2007, and continuing through the present time, in the Fort Worth Division of the Northern District of Texas, and elsewhere, defendant **James VanBlaricum** with the intent to defraud did devise and execute a scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises.

On or about November 2, 2015, in the Fort Worth Division of the Northern District of Texas for the purpose of executing or attempting to execute said scheme and artifice to defraud, defendant **James VanBlaricum** knowingly caused to be delivered by a private and commercial interstate carrier, check #1022 in the amount of $273.98 from Benbrook, Texas, to victim A.S. in Wheaton, Illinois.

All in violation of 18 U.S.C. § 1341 (Mail Fraud).

1. Signal Oil and Gas Company (SOG) was an oil and gas exploration company incorporated by James VanBlaricum (JVB) in 2000. The Land, Lease Program (LLP) was one of several oil and gas investment programs offered for purchase to investors by SOG. Texas Energy Management/Mutual (TEM) is the name of the follow-on company to SOG. TEM began in 2008.

2. On August 21, 2008, Jeffrey Warsing (Warsing), investigator for The Texas State Securities Board (TSSB) contacted the Postal Inspector's Office in Fort Worth, Texas. Warsing reported a potential mail fraud (Ponzi scheme) operated by James E. VanBlaricum (JVB), dba Signal Oil and Gas Company (SOG), 5208 Airport

Freeway, Ste 100, Fort Worth, Texas 76117. The scheme involved the sale of interests to investors in oil and gas related projects. The TSSB began receiving complaints on JVB in 2004. The complaints were received from SOG company investors relating to various programs promoted by JVB and misrepresentations made to them by SOG salesman. The main complaint was lack of investment payments. This investigation disclosed that during the period January 21, 2006, through January 31, 2009, fifty-three (53) victims of a mail fraud scheme involving SOG's Land, Lease Program (LLP) were identified with investments totaling $2,633,090.00. Investors made their initial investments by either mailing personal or cashier's checks from their residence to SOG in Texas, having their financial consultant mail their checks to SOG in Texas for them, or wire transfers to SOG's bank accounts.

3. Postal Inspectors began investigating this case following the referral from TSSB. An analysis of LLP prospectuses obtained from investors showed the following, in part:

   a. Each prospectus reflected an "assured" rate of return on an initial investment amount.
   b. The assured rate of return ranged from nine up to fifteen percent of the amount invested depending on which version of the prospectus an investor received.
   c. Each prospectus stated investors would receive a full refund of their initial investment amount after the three to five-year investment period.
   d. Some prospectuses provided Minimum Assured Income Schedules reflecting assured and estimated potential rates of return of five to thirty-five percent.
   e. Some prospectuses reflected potential, projected, or examples of the allocation of investor funds in fifty percent hard assets and fifty percent oil and gas exploration.

4. Records of the Texas Secretary of State revealed SOG was created on October 23, 2000, by the filing of Articles of Incorporation. JVB was listed as the registered agent and sole incorporator. On March 23, 2001, Articles of Amendment were filed with the Texas Secretary of State for SOG and was signed by the sole director of the corporation, JVB. SOG was initially operated by JVB from the address 5208 Airport Freeway, Suite 100, Fort Worth, Texas 76117. Beginning in 2004, SOG was also receiving mail at 2100 W NW Highway #114, Grapevine, TX 76051. This location was a Commercial Mail Receiving Agency (CMRA). This box was changed to Texas Energy Management (TEM) on November 2, 2010 by JVB.

5. In the Affiant's experience as a Postal Inspector, CMRA's such as UPS Stores, Mail Boxes Etc., FedEx Offices, Virtual Offices, and others are a paid service provided by these businesses to consumers and businesses. CMRA's are required to file, with the United States Postal Service, a PS Form 1583, *Application for Delivery of Mail Through Agent.* This form lists, among other information, the name of who is allowed to receive mail and the physical address of the applicant. In addition, a government ID is verified against the application by the CMRA. Customers of CMRA's tend to use them due to proximity to their business/residence and longer hours of operation. CMRA's will hold mail and packages for their customers as long as the box payment is maintained. In the Affiant's previous investigations, criminals used CMRA's to facilitate fraudulent schemes and to make fraudulent businesses appear legitimate. CMRA's allow for multiple individuals to pick up mail and packages, provided they are listed on the PS Form 1583. This is accomplished by using the physical address of the actual CMRA and designating a "Suite," "Apt," or "Box" number as annotated on the PS Form 1583. These designations can be used to mask the lack of a physical business address or the true location of a business.

6. An analysis was completed of the use of LLP investor funds received by SOG. As previously noted, LLP prospectuses reflected investor funds were to be used fifty percent for hard assets and fifty percent for oil and gas exploration. Approximately $2,000,000.00 of LLP investor funds were deposited into SOG Wells Fargo bank accounts along with comingled funds from other sources. Summaries of Wells Fargo bank accounts are provided, in part, as follows:

| **Amount** | **Purpose** | **Bank Account** |
|---|---|---|
| $1,215,784.55 | SOG employee payroll | Wells Fargo 1516; 9935 |
| $374,771.82 | LLP Investor interest payments | Wells Fargo 1516; 1825; 9919 |
| $352,000.00 | Day Trading/Swing Trading | Wells Fargo 9935; 9943 |
| $165,739.68 | Other investor payments | Wells Fargo 1516 |
| **$2,108,296.05** | **Total** | |

7. Based on this analysis, the Affiant determined that funds deposited into the Wells Fargo accounts listed above had not been used for the purposes described in the prospectuses and appeared to have been misused by SOG and JVB. Over half of the investor funds went to employee payroll and day trading.

8. "Dividend" or investment payments included payments to older investors from programs that preceded LLP. These "dividend" payments came from Wells Fargo accounts where deposits from newer investors were kept. This is highly indicative of a Ponzi scheme where older investors are paid with newer investor money.

9. Many of the victims in the LLP Program invested due to the recommendation of financial consultants T.D., B.H., or S.S.

10. Victim A.S. was interviewed and stated he invested a total of $100,000.00 in LLP through T.D. in 2008, and received promissory notes for each investment which were signed by JVB. A.S. also invested an additional $40,000.00 for his mother who is now deceased. T.D. told A.S. the LLP was a safe program and provided him a prospectus. A.S. was told there was an assured rate of return of fifteen percent per year on his investment. A.S. understood the LLP investment to be of physical assets which would be leased out by SOG. In a letter received by A.S. from SOG, signed by JVB, dated March 19, 2009, JVB stated the investment assets included regional pipeline, tubular goods, leases, seismic data, production equipment and potential production. The letter also stated, "we have been working to find some source of income for your program, but there is very little activity at this time and the assets are just sitting with no income." A.S. received approximately $5,000.00 in payments from the LLP in 2008. In early 2009, his next two "dividend" checks bounced.

11. Suspicious of JVB, A.S. along with T.D. flew to Texas and met with JVB in August 2009. JVB drove A.S. and T.D. to several locations pointing out various oil and gas wells, storage tanks, and drilling equipment and represented to A.S. and T.D. that they were part of LLP or otherwise owned by SOG. JVB assured A.S. and T.D. that SOG would make good on A.S.'s investment as soon as oil prices went up and credit became more available.

12. Due to A.S.'s continued persistence in contacting JVB, JVB sent A.S. lulling letters and additional investment payments, some of which came in the form of Texas Energy Mutual (TEM) checks. One of these lulling payments was check #1022 in the amount of $273.98 mailed on November 2, 2015 via United Parcel Service from Benbrook, Texas to victim A.S.'s residence in Wheaton, Illinois.

13. In the Affiant's experience as a Postal Inspector, a lulling letter or payment is designed to lull the victim into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect and is used in furtherance of a Ponzi or other fraudulent scheme.

14. The Wells Fargo accounts listed in paragraph six, opened by JVB with JVB as the authorized signer, were active during the time of A.S. investments into LLP with SOG. A.S.'s original investment was deposited into account "9935" above.

15. Beginning about 2008, JVB and other co-conspirators began operating other oil and gas investment programs including Texas Energy Management and Texas Energy Mutual (TEM). Victim A.S., after contacting JVB repeatedly about returning A.S.'s original investment was told by JVB that his investment had been rolled over into TEM. A.S.'s original investment has never been returned.

16. The general pattern of conduct described above with regard to A.S. was repeated with several other LLP investors interviewed during the course of this investigation.

17. Based upon the foregoing facts and information, I submit there is probably cause to believe that **James VanBlaricum** has violated 18 U.S.C. § 1341 (Mail Fraud).

Matthew J. Write
U.S. Postal Inspector
United States Postal Inspection Service

SWORN AND SUBSCRIBED before me, at 2:50 am/pm this 16th day of August, 2016.

JEFFREY L. CURETON
United States Magistrate Judge
Fort Worth, Texas